IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIC KUBA,

          Plaintiff,                    No. CIV S-04-1434 WBS KJM

        vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social

Security ("Commissioner") denying an application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court

recommends plaintiff's motion for summary judgment or remand be denied and the

Commissioner's cross motion for summary judgment be granted.

/////

/////

/////

/////

/////

1

1  I. Factual and Procedural Background

2          In a decision dated February 24, 2004, the ALJ determined plaintiff was not

3  disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals

4  Council denied plaintiff's request for review.  The ALJ found that plaintiff has a severe

5  impairment of back pain but the impairment is not a listed impairment; plaintiff is not generally

6  credible; plaintiff retains the residual functional capacity to perform light work limited by the

7  requirement of having a sit/stand option and no more than occasional climbing, balancing,

8  stooping, kneeling, crouching, and crawling; plaintiff cannot perform his past relevant work;

9  based on the testimony of a vocational expert, there are a significant number of jobs in the

10

11          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability
is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:

15
                 Step one:  Is the claimant engaging in substantial gainful
16       activity?  If so, the claimant is found not disabled.  If not, proceed
         to step two.
17               Step two:  Does the claimant have a "severe" impairment?
         If so, proceed to step three.  If not, then a finding of not disabled is
18       appropriate.
                 Step three:  Does the claimant's impairment or combination
19       of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
         404, Subpt. P, App.1?  If so, the claimant is automatically
20       determined disabled.  If not, proceed to step four.
                 Step four:  Is the claimant capable of performing his past
21       work?  If so, the claimant is not disabled.  If not, proceed to step
         five.
22               Step five:  Does the claimant have the residual functional
         capacity to perform any other work?  If so, the claimant is not
23       disabled.  If not, the claimant is disabled.  _____

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

2

1  national economy that he could perform; and plaintiff is not disabled.  AT 17-18.  Plaintiff

2  contends that the ALJ improperly rejected a physician's opinion; failed to properly develop the

3  record; and failed to incorporate all of plaintiff's functional limitations into the residual

4  functional capacity.

5  II.  Standard of Review

6              The court reviews the Commissioner's decision to determine whether (1) it is

7  based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

8  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

9  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

10  Substantial evidence means more than a mere scintilla of evidence, but less than a

11  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

12  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

14  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

15  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

16  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

17  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

18  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

19  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

20  substantial evidence supports the administrative findings, or if there is conflicting evidence

21  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

22  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

23  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

24  1335, 1338 (9th Cir. 1988).

25  /////

26  /////

1    III.  Analysis

2          A.  Physician's Opinion

3          Plaintiff contends the ALJ improperly rejected the opinion of a physician, Dr.

4    Light, who saw plaintiff one time for treatment.  The weight given to medical opinions depends

5    in part on whether they are proffered by treating, examining, or non-examining professionals.

6    Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the

7    opinion of a treating professional, who has a greater opportunity to know and observe the patient

8    as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

9          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

10   considering its source, the court considers whether (1) contradictory opinions are in the record,

11   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

12   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

13   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

14   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

15   81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if

16   it is contradicted by a supported examining professional's opinion (e.g., supported by different

17   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

18   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

19   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

20   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

21   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

22   non-examining professional, without other evidence, is insufficient to reject the opinion of a

23   treating or examining professional.  Lester, 81 F.3d at 831.

24         Plaintiff acknowledges Dr. Light only saw plaintiff one time for treatment but

25   contends Dr. Light should be accorded examining physician status and that his opinion, which is

26   contradicted in the record, can be rejected only for specific and legitimate reasons.  Dr. Light

4

1   examined plaintiff on April 23, 2003 and filled out a residual functional capacity questionnaire

2   six months later.  AT 191-196.  In the questionnaire, Dr. Light admitted that the only basis of his

3   opinion was the one-time examination in April 2003 and that no other medical history had been

4   made available to him.  AT 195.  Dr. Light opined plaintiff could use his hands, fingers, and arms

5   for only 1 percent of a normal work day and could not sit, stand or walk for even two hours.  AT

6   192-193.

7          The ALJ rejected Dr. Light's severely restrictive limitations in favor of

8   consultative examining physician Dr. Kohli and the state agency physicians, who opined plaintiff

9   was restricted to light work[2] with certain postural limitations.  AT 15, 16; cf. AT 106, 115-117.

10   The ALJ discounted Dr. Light's opinion because the limitations set forth therein were not

11   supported by the other medical records.  AT 15, 16.  Only minimal clinical findings were set

12   forth in Dr. Light's treatment note, in marked contrast to the detailed findings set forth by Dr.

13   Kohli.  AT 196; cf. AT 103-105.  Plaintiff's main medical treatment was chiropractic care; the

14   chiropractic treatment notes do not support the extreme limitations found by Dr. Light.[3]  AT 145-

15   149.  The ALJ also considered the six month lapse of time between Dr. Light's April 2003

16   examination and the report he prepared based on notes in October 2003.  AT 15.  The ALJ noted

17   Dr. Light did not treat plaintiff at any time during the period relevant to the disability

18

19   _____

    [2]  20 C.F.R. § 404.1567(b) provides:

20
          Light work involves lifting no more than 20 pounds at a time with
21        frequent lifting or carrying of objects weighing up to 10 pounds.
          Even though the weight lifted may be very little, a job is in this
22        category when it requires a good deal of walking or standing, or
          when it involves sitting most of the time with some pushing and
23        pulling of arm or leg controls.  To be considered capable of
          performing a full or wide range of light work, you must have the
24        ability to do substantially all of these activities.

25    [3]  In any event, the chiropractic records cannot serve as a basis for Dr. Light's opinion
    inasmuch as Dr. Light acknowledged he had no other medical records to support his findings.
26  AT 191.

5

1    determination.[4]  The reasons given by the ALJ for rejecting Dr. Light's opinion are specific and

2    legitimate and supported by substantial evidence.

3              Plaintiff also contends the ALJ failed to consider Dr. Light's specialty.  The report

4    filled out by Dr. Light does not indicate his specialty, if any.  Although representations were

5    made by both plaintiff and his counsel that Dr. Light is a spinal surgeon specialist, AT 221, 237,[5]

6    Dr. Kohli's specialty is also in the field of orthopedics.  AT 101.  The administrative record does

7    not compel a conclusion that Dr. Light's opinion must outweigh that of another physician

8    specializing in the same field.

9         B.  Duty to Develop Record

10             Plaintiff contends the ALJ should have developed the record by obtaining x-rays

11   and MRIs that plaintiff himself purportedly could not afford, so that plaintiff's medical status

12   could be more fully evaluated.  Disability hearings are not adversarial. See DeLorme v. Sullivan,

13   924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)

14   (ALJ has duty to develop the record even when claimant is represented).  Whether evidence

15   raises an issue requiring the ALJ to investigate further depends on the case.  Generally, there

16   must be some objective evidence suggesting a condition that could have a material impact on the

17   disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v.

18   Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991).  "Ambiguous

19   evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter,

20   _____

21        [4] Alleged onset of disability is July 10, 1998; date last insured is December 31, 2002.
     AT 17.

22        [5] Plaintiff's brief to this court, in a footnote, cites to a website of the American Medical
     Association (AMA) indicating Dr. Light is a board certified orthopedist, Plaintiff's Brief at 4:3 n.
23   5, unlike Dr. Kohli who is board eligible, id. at 10.  See also id. at 8.  Plaintiff has made no
     request for judicial notice of the AMA website.  Even if this court could take judicial notice of
24   the information now provided, the information  was not submitted at the administrative level and
     therefore is not properly considered at this stage of review.  The information does not warrant
25   remand, as it does not satisfy the requirement of materiality, and plaintiff has not shown good
     cause for the failure to submit the information to the ALJ.  Cf. Mayes v. Massanari, 276 F.3d
26   453, 462 (9th Cir. 2001).

1   242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Smolen</u>, 80 F.3d at 1288).

2          Plaintiff's argument in this case puts the cart before the horse.  There was no

3   failure here on the part of the ALJ to obtain previously existing medical evidence, such as x-rays

4   or MRIs, because such records did not exist.  And it is not incumbent upon the Commissioner to

5   provide prospective medical care for plaintiff.  It is plaintiff's duty to adduce medical evidence of

6   disability.  20 C.F.R. § 404.1512.

7          Moreover, ordering a consultative examination or other testing ordinarily is

8   discretionary and is required only when necessary to resolve the disability issue.  <u>See</u> <u>Armstrong</u>

9   <u>v. Commissioner of Social Security</u>, 160 F.3d 587, 589-90 (9th Cir. 1998) (where record unclear

10  as to determinative issue, ALJ committed reversible error by deciding issue without consulting

11  medical expert).  To the extent there was any ambiguity in the record, the ALJ fulfilled the duty

12  to develop the record because a consultative exam was obtained via Dr. Kohli, whose

13  conclusions were based on independent clinical findings.  AT 101-106; <u>see</u> 20 C.F.R. §

14  404.1519.  While plaintiff, without foundation, asserts his condition could not be properly

15  evaluated without the benefit of a spinal x-ray or MRI, plaintiff had worked for years with the

16  same spinal deformity.  AT 101-102, 105, 212.  Plaintiff offers no medical evidence to explain

17  how an x-ray taken after the date last insured would illuminate plaintiff's condition during the

18  relevant time period or how such x-ray evidence would demonstrate how plaintiff's spinal

19  condition had changed from the time during which plaintiff could work and the alleged onset of

20  disability.  There was no error in failing to obtain an x-ray or MRI of plaintiff's spine.[6]

21

22          [6] There is one lacuna in the record that merited further development by the ALJ.  In the
    application for disability benefits signed on July 26, 2002, plaintiff stated he was the vice-
23  president/secretary of a California corporation dealing with buying, selling, trading and holding
    real estate.  AT 45.  Plaintiff reported profits for the year 2001.  This job is not listed on
24  plaintiff's disability report.  AT 54.  The ALJ found at step one of the sequential analysis that
    plaintiff had not engaged in substantial gainful activity.  AT 17 (Finding no. 2).  Further
25  development of the record to reveal the extent of plaintiff's activities in buying and selling real
    estate and the profits derived therefrom would have aided the ALJ in assessing whether
26  plaintiff's activities in this regard should be considered substantial gainful activity.  <u>See</u> 20

1        C. Functional Limitations

2        Plaintiff also contends the ALJ failed to include in the residual functional capacity

3   a functional limitation of the hands.  Social Security Ruling 96-8p sets forth the policy

4   interpretation of the Commissioner for assessing residual functional capacity.  SSR 96-8p.

5   Residual functional capacity is what a person "can still do despite [the individual's] limitations."

6   20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085

7   (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

8   Medical evidence is used in assessing residual functional capacity.  SSR 96-8p.

9        Plaintiff testified that due to tingling in his hands, he had difficulty with "fine

10   motor stuff" and that he dropped things.  AT 220.  Plaintiff reported to Dr. Light that he had

11   "some numbness and tingling in his fingers."  AT 196.  Plaintiff also reported to Dr. Kohli that

12   he had "tingling and numbness in the right upper extremity."  AT 101.  Plaintiff reported to his

13   chiropractor that he experienced left arm and hand numbness and tingling.  AT 146.  Despite

14   these reported complaints, plaintiff did not assert functional limitations in the hands as a basis of

15   disability.  AT 53.  Other than the properly discounted opinion of Dr. Light, no functional

16   limitations due to the hand numbness were found by any physician.  Dr. Kohli examined

17   plaintiff's hands and assessed negative Tinel sign on both sides and evaluated plaintiff's grip

18   strength.  AT 104-105.  Although the grip strength results are set forth in Dr. Kohli's report, the

19   expected normal grip strength is not.  However, Dr. Kohli reported motor strength as being

20   within normal limits and sensation was normal for both upper and lower extremities.  AT 105.

21   Dr. Kohli assessed no limitations attributable to loss of hand function.  Although plaintiff

22   consistently reported complaints of some tingling or numbness, plaintiff fails to substantiate any

23   functional loss due to this complaint.  There was no error in the residual functional capacity

24   analysis.

25   _____

26   C.F.R. § 404.1510.  The issue of whether the ALJ's finding at step one was correct, however, is
     not before this court.

1    The ALJ's decision is fully supported by substantial evidence in the record and

2    based on the proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED that:

3         1.  Plaintiff's motion for summary judgment or remand be denied, and

4         2.  The Commissioner's cross motion for summary judgment be granted.

5         These findings and recommendations are submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

7    days after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10   shall be served and filed within ten days after service of the objections.  The parties are advised

11   that failure to file objections within the specified time may waive the right to appeal the District

12   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED:  August 2, 2005.

14

15   _____
     UNITED STATES MAGISTRATE JUDGE

16

17

18   006
     kuba.ss
19

20

21

22

23

24

25

26

9